**Hearing Date: April 10, 2018 at 10:00 AM**
**Re: ECF No. 6, 20**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| QUINCY ST III CORP., | Case No. 18-22294 (RDD) |
| *Debtor.* | |

**1077 MADISON STREET LLC'S REPLY TO THE DEBTOR'S OBJECTON TO THE MOTION OF 1077 MADISON STREET LLC FOR RELIEF FROM THE AUTOMATIC STAY**

1077 Madison Street LLC ("1077 LLC"), by and through its counsel, hereby files this reply (the "Reply") to the objection [Docket No. 20] of the above-captioned debtor (the "Debtor") to 1077 LLC's motion for stay relief (the "Stay Relief Motion") [Docket No. 6] with respect to the Debtor and that certain two-family, investment property located 299 Quincy Street, Brooklyn, NY 11216 [Block 1803, Lot 66] (the "Property"), on which 1077 LLC holds a final judgment of foreclosure and sale and first lien mortgage.

In support hereof, 1077 LLC respectfully states as follows:

## REPLY

1. As set forth in the Stay Relief Motion, 1077 LLC holds a claim against the Debtor in the amount of $1,027,432.07 as of February 22, 2018, the petition date in this case. 1077 LLC filed Claim No. 1 in this case as the named judgment creditor on that certain final judgment of foreclosure and sale entered December 19, 2017 (the "Judgment") in New York State Supreme Court for Kings County, Index No. 34103/2006 (the "Foreclosure Action"). The Foreclosure Action has been pending for *twelve years* against a non-Debtor. In the middle of that litigation, the Debtor acquired the Property and did not satisfy the underlying mortgage of 1077 LLC.

2. Notwithstanding the entry of the final Judgment, throughout the Objection the Debtor makes inflammatory claims concerning “fraud,” “lackluster [foreclosure] proceeding,” “phony mortgage,” the original obligor’s “purported[]default,” and reference a litany of “purported” assignments. These statements are sure to get the Court’s attention. However, there is no valid state law challenge to 1077 LLC’s claim or 1077 LLC’s right to assert it in this case against the Debtor given that 1077 LLC is the named judgment creditor and that the Judgment fixes the amount due and authorizes the sale of the Property. There is also no dispute that 1077 LLC is also the holder of the original note endorsed in blank. A true and correct copy of that note is attached hereto as Exhibit A. Even putting aside the final Judgment, the issues that the Debtor tries to create concerning the chain of assignments are irrelevant even if they were true. There is no requirement under state law that a holder like 1077 LLC establish how it came into the possession of a note endorsed in blank. *See JPMorgan Chase Bank, Nat. Ass'n v. Weinberger*, 142 A.D.3d 643, 644 (App.Div. 2nd Dept. 2016). (“There is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into possession of the instrument in order to be able to enforce it.”) (citing UCC 3-204(2)). “[I]t is unnecessary to give factual details of the delivery in order to establish that possession was obtained prior to a particular date.” *Id.* (citing *Aurora Loan Servs., LLC v Taylor*, 25 NY3d 355, 361-362 (N.Y. 2015).) Even if any of these issues raised by the Debtor were relevant, they should be raised in and decided by the state court. Therefore, these arguments by the Debtor support stay relief in this case.

***The Burdens of Proof on the Stay Relief Motion Favor Granting the Motion***

3. The movant, 1077 LLC, bears a prima facie burden of proof of all issues but, under 362(g), that burden shifts to the Debtor on all issues except Debtor’s equity. 1077 LLC

met its prima facie burden in numerous ways, including Debtor's lack of equity, but the Debtor's opposition fails to sustain *any* of the Debtor's burdens under section 362(g). There is no material dispute about the value of the Property here. The adequate protection offered by the Debtor is not adequate by any means in that the Debtor has no equity in the Property and is merely offering to hoard excess cash and pay current expenses as a form of adequate protection. Finally, the Debtor has offered nothing concrete about its ability to reorganize other than to say its strategy is to litigate the 1077 LLC claim until a plan emerges. Based on the foregoing, the Court should grant the Stay Relief Motion.

***There in No Time Limitation on a Motion for Stay Relief***

4. The Debtor's first objection to the Stay Relief Motion is that it was filed just over two weeks into the case. As a plain reading of 362(d) makes clear, there is no time limitation within 362(d). Once the conditions for stay relief are satisfied, the court "shall" grant stay relief. Congress could easily have included a waiting period as it did for exclusivity but it did not. If the conditions are right for modifying the stay in some way, the court is mandated to do it under the law. 1077 LLC submits that those conditions are right here. To the extent passage of time is implicated in stay relief, it is implicated in the second branch of 362(d)(2) on the Debtor's burden of proof for a successful reorganization. The Debtor has not shown anything but a plan to litigate or negotiate down the 1077 LLC claim amount as its exit strategy in this case. Accordingly, even at this early stage, it is clear that the Debtor has no strategy at all let alone one with a reasonable prospect of reorganization.

***Attempts to Create a State Law Issue Should be Disregarded or Referred to the State Court***

5. As noted, the Debtor spends half of the objection challenging 1077 LLC's rights under the Judgment. First, the Debtor's wrongly transferred Property is what is affected by the

Judgment, not the Debtor itself. Second, contrary to the Debtor's implications, the Foreclosure Action was not secret. It was a matter of public record. Third, the Debtor could have and should have satisfied the 1077 LLC mortgage when the Debtor closed on the purchase. It did not. The Debtor could also have satisfied the mortgage sometime during the five years of foreclosure proceedings *after* it acquired the Property. It did not. Fourth, the Debtor could have attempted to intervene in the Foreclosure Action. It did not. The Debtor could have at least appeared in the Foreclosure Action for notice purposes in the matter. It did not. Finally, the Judgment does nothing to cut off or curtail in any way the Debtor's equitable right of redemption and that is the Debtor's only legal interest or concern with the Judgment.

6. As noted, to the extent that there is any valid dispute over the details of the entry of the Judgment that was entered in state court, then such dispute is itself grounds for relief under *Sonnax*[1] to refer the matter back to state court for a resolution. As a final judgment, this Court may not set it aside as it is entitled to the full faith and credit of this Court. *See generally* 28 U.S.C. §1738. As a non-party to the Judgment, the Debtor is not entitled to challenge it in this or any court. That said, 1077 LLC submits that if the stay is lifted, all parties including the Debtor retain all of their state law rights to the extent they exist to challenge the entry of that Judgment in state court. Experience tell us though that the Debtor will resist that at all cost and would not want to pursue those state law rights anywhere but in this Court and the Court should query as to why. Clearly, the Debtor is relying on this Court to resurrect the Foreclosure Action, set aside the Judgment and re-litigate those proceedings long after the Judgment was entered. This Court should not do so.

---

[1] *In re Sonnax Industries*, 907 F.2d 1280, 1285 (2d Cir.1990).

**RESERVATION OF RIGHTS**

7. 1077 LLC hereby reserves its right to supplement this reply if the Debtor files additional documents or makes additional arguments in connection with the Stay Relief Motion. Further, 1077 LLC expressly reserves and does not waive any and all of its rights, claims, and/or defenses in connection with its Judgment and claim in this case. 1077 LLC reserves the right to oppose on any basis any additional relief sought by the Debtor on any issue in this case and reserves its rights with respect to all other issues, including valuation for any reason in this case.

Dated: April 9, 2018
New York, New York

RAVERT PLLC

By: /s/ Gary O. Ravert

Gary O. Ravert
116 West 23 Street, Fifth Floor
New York, New York 10011
Tel: (646) 961-4770
Direct Fax: (917) 677-5419
Email: gravert@ravertpllc.com

*Attorneys For 1077 Madison Street LLC*

# **EXHIBIT A**

Pg 7 of 9

ORIGINAL

# NEW YORK BALLOON NOTE
**(Fixed Rate)**

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| April 10, 2006 | Brooklyn | New York |
|---|---|---|
| [Date] | [City] | [State] |

299 Quincy Street, Brooklyn, NY 11216-

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 513,600.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation .

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.900 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on June 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 05/01/2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612

or at a different place if required by the Note Holder

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $3,532.64 .

1006877025

**NEW YORK BALLOON FIXED RATE NOTE** - Single Family - **FANNIE MAE UNIFORM INSTRUMENT** **Form 3260.33 1/01 (rev. 5/02)**

Page 1 of 3

VMP-870N(NY) (0205) VMP MORTGAGE FORMS - (800)521-7291 Initials: [signature]

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows: 

## AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Osbert Dickerson (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

*[Sign Original Only]*

Pay to the order of, without recourse

New Century Mortgage Corporation
By: Steve Nagy
V.P. Records Management

1006877025