**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Fifth Floor
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for 1077 Madison Street LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> QUINCY ST III CORP., <br><br> *Debtor.* | Confirmed Chapter 11 <br><br> Case No. 18-22294 (RDD) |

**1077 MADISON STREET LLC'S OBJECTION TO FINAL FEE APPLICATION**
**AND ENTRY OF FINAL DECREE [Docket Nos. [154, 158]**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

   1077 Madison Street LLC ("1077"), by and through its counsel, hereby objects (the "Objection") to the above-captioned debtor's (the "Debtor") (1) application for final approval of its counsel's legal fee and expenses in this case (the "Final Fee Application") [Docket No. 154] and (2) application for entry of the final decree ("Final Decree Application" [Docket No. 158] and collectively with the Final Fee Application, the "Applications"). As this Court is aware, this case centers around the disposition of one asset, the real property located at 299 Quincy Street, Brooklyn, NY (the "Property").

   The Final Decree Application contains within it an apparent attempt (i) to allow and reimburse an unauthorized non-ordinary course payment by the Debtor and (ii) to fix 1077's

secured claim amount. This Objection responds to all of the foregoing. 1077 submits that both Applications should be granted solely to extent provided for herein.

In furtherance hereof, 1077 respectfully represents as follows:

**OBJECTION**

1. Three primary issues come up in the Applications: (1) <u>First</u>, how much is the Final Fee Application really asking for: approximately $89,000, $69,000 or $27,000? That is unclear from the Final Fee Application but it appears that the Debtor is only asking for an additional $27,550 on top of its counsel's $20,000 retainer. As set forth below, 1077 would agree to an addition $2,500 for the closing fees for a total award of $23,250. (2) <u>Second</u>, the Final Decree Application seeks to allow as a "closing cost" $25,000 the Debtor purportedly paid to tenants in October to vacate the building when the Debtor told the Court this past July that it was vacant in June. The sale was subject to valid leases and should have been sold that way. To the extent the Debtor made promises otherwise, that problem should not be borne by 1077 as a closing cost. In sum, if the Debtor wanted to conduct this "outside of the ordinary course" transaction and force 1077 to pay for it, the Debtor should have given notice and sought approval for same (at which 1077 would have objected as such payment was improper in principal and in amount). (3) <u>Third</u>, the Final Decree Application improperly tries to limit 1077's secured claim to a figure well below what 1077 agreed to at confirmation as part of its efforts to get an otherwise unconfirmable plan confirmed. 1077 holds a prepetition claim in the amount of $1,027,432.07 based on a final state court judgment of foreclosure and sale, a mortgage, and an assignment of rents against the Property and rents thereof—the only assets of this estate. A sale of the Property closed on or about October 11, 2019 and was sold for $1,125,000[1]. 1077

---

[1] A broker's fee to Maltz was paid by the purchaser and therefore did not decrease the sales proceeds. If this fee is added to the value, the value of the collateral only becomes higher.

estimates that the Debtor collected well more than $100,000 in rents during the bankruptcy case even though the Debtor only reported about $50,000 on the operating reports. Collectively, therefore, the collateral was valued at $1,225,000 ($1,125,000 + $100,000) or taking what 1077 submits were false operating reports at face value, valued at $1,175,000 ($1,125,000 + $50,000) versus 1077's $1,027,432 claim.

2. Thus, notwithstanding the Debtor's calculations in an *exhibit* deep within the Final Decree Application, 1077 (i) was an oversecured creditor throughout this case, (ii) is not being paid in full in this case and (iii) has a first lien right to *all* of the sales proceeds except for the amounts this Court allows pursuant to section 506(c) of the Bankruptcy Code or that 1077 otherwise specifically agreed to. The Debtor improperly deducts numerous amounts from the total collateral value and concludes (and discloses its belief for the first time) on page 28 of the Final Decree Application that 1077's secured claim is actually just $974,880. The Debtor's deductions are an improper attempt to suggest that all amounts 1077 agreed to as administrative expense (like priority unsecured tax claims, UST fees, and OATH violations) should now to be used to hurt 1077's secured position. Those agreements at confirmation by 1077 were to facilitate confirmation and were not any kind of concession as to value or priority of lien. As of today, the amount remaining in Mr. Fox's IOLTA account is approximately $1,033,000. As set forth below, the Debtor must restore to that account the $25,000 in unauthorized funds it simply paid itself as a "reimbursement" which would bring the IOLTA account up to approximately $1,058,000 which was the amount that 1077 approximately agreed to at confirmation so that this case could be confirmed.

3. We are now nearly two years into the chapter 11 case and we are likely still a full year away from a final disposition of the Debtor's state court appeal determination. This case

was essentially gambit by the Debtor that the Debtor hopes will have been waged at 1077's expense. The Court should not allow the Debtor's efforts to come at the expense of 1077 any more than 1077 has already agreed to or that 506(c) requires. The Debtor seeks this Court's approval to charge 1077 for the cost to the Debtor of nearly two year of efforts where it was already denied relief in the rulings of state court. For all of the leeway this Court gave the Debtor to return to state court, the Debtor responded by taking advantage of the Court's generosity by needlessly delaying a final state court adjudication leaving us where we are today.

4. As noted above, to the extent estate legal fees are to be charged against 1077, 1077 would agree to increase the closing costs by $2,500 for a total estate legal allowance of $23,250 vs. the $20,750 agreed to at confirmation. Beyond that, 1077 does not object to any other allowance of Debtor's counsel's legal fees and expenses <u>provided that</u> that the source of payment <u>is not the sales proceeds</u>. If the Debtor's principals believe Mr. Fox's efforts were valuable to such principals they can pay those fees from their own pockets. 1077 agreed to a carve out for professional fees in the amount of "up to" $20,750 including $750 for closing. As stated in 1077's confirmation objection the closing costs were supposed to be borne by the purchaser. This Court observed more than once at the confirmation hearing that on a 506(c) basis, it would be unlikely it would award more than 1077's agreed amount as a surcharge against the collateral as the law simply does not support such a finding. Again, this is a single asset real estate case based on a final judgment of foreclosure and sale. The only reason this case dragged on and the administrative expenses increased as much as they did is that the Debtor senselessly delayed the final dispositions of the Property and state court proceedings. The cost of those delays should not be borne by 1077 as a charge against the collateral.

5. Next, the Debtor seeks entry of final decree and as part of that application seeks approval of certain events associated with the closing of the sale of the Property. 1077 does not object to the closing costs except with respect to the outrageous $25,000 amount the Debtor purportedly paid that it tries to pass off as a normal closing cost: The Debtor conducted this non-ordinary course transaction without obtaining authority of this Court and Mr. Fox apparently permitted the Debtor to take $25,000 of the sales proceeds so it could be paid back that money. This entire transaction was improper and those funds must be restored to the IOLTA account. That $25,000 was improperly paid to tenants to vacate the Property after the Debtor was caught lying to this Court that the Property was vacant. Recall at confirmation Mr. Fox arguing that his client should not be required to make any more adequate protection payments: "So we vacated the property, the property was sold vacant, and its been vacant." (7/12/19 Hr'g Tr. at 12: 19-21). The Debtor's back was up against the wall with that lie and to somehow smooth it over, they tried to spend 1077's sales proceeds to turn a lie into a truth as of the closing. There was no requirement that the Property be sold vacant. That was a hope and a request by Maltz if it could be done but a payment from sale proceeds required court approval on notice, neither of which was obtained. In short, these amounts were paid prior to closing and were improper. This should not be a closing cost and to the extent those funds were reimbursed to the Debtor's principals from closing proceeds, they were unauthorized, improper and must be returned.

6. Next, on a related issue, the legal fees associated with closing ended up substantially higher because they were derived at least in part from the Debtor's delays and false statements to this Court concerning the status of tenancies. Indeed, this should have been a straightforward post-confirmation closing that Debtor's counsel would admit he has done a hundred times in bankruptcy. Notwithstanding that, as noted, 1077 would agree to an additional

$2,500 for closing costs for a total of $3,250 in estate closing costs but 1077 is unwilling to agree to any further carve out of sales proceeds for the Debtor's other legal fees. 1077 submits that the allowable 506(c) legal charges would not exceed the amounts 1077 has agreed to. 1077 reminds the Court that 1077 also agreed to payments for priority claims and U.S. Trustee fees which have turned out to be significant. 1077 submits that it has gone as far if not further than it could have been required to go. Accordingly, 1077 requests that the Court not charge any further fees or expenses against the collateral and further require the Debtor's principals to restore the $25,000 payment to tenants to the sales proceeds.

### **Waiver of Fee to Reopen on Termination of Appeal**

7. Finally, with respect to the final decree, 1077 understands the need and desire to close this case. However, at confirmation the parties discussed with the Court the possibility of waiving a filing fee to reopen this case when the state court action is concluded. 1077 requests that the final decree include a provision that, in the event that a motion to reopen this case is filed to enter an order on the final allowance of 1077's claim based on the state court ruling, the $1,1717 filing fee be waived.

### **CONCLUSION**

For the reasons stated above, 1077 respectfully request that this Court enter an order (a) (i) approving the Final Fee Application and Final Decree Application only subject to the foregoing comments, (ii) directing the Debtor to return the $25,000 unauthorized payment to the tenants made months after the Debtor represented to the Court that Property was vacant; and (iii) include in the final decree a provision waiving a filing fee on a motion to reopen to enter a final order on 1077's payment in this case; and (b) 1077 requests that the Court grant such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: November 27, 2019<br>New York, New York | RAVERT PLLC<br><br>By: /s/ Gary O. Ravert<br>    Gary O. Ravert<br>116 West 23rd Street, Fifth Floor<br>New York, New York 10011<br>Tel: (646) 966-4770<br>Fax: (917) 677-5419<br><br>*Attorneys for 1077 Madison Avenue LLC* |